UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:14-cr-72-HSM-SKL |
| | ) |
| CHARLES MASSENGILL, | ) |
| | ) |
| Defendant. | ) |

**REPORT & RECOMMENDATION**

Before the Court is a second motion to suppress filed by Defendant Charles Massengill ("Defendant") [Doc. 53], along with a supporting memorandum [Doc. 54]. In the second motion to suppress, Defendant claims both that he was not given any Miranda warnings and also that he failed to understand any Miranda warnings given, and he seeks to suppress all incriminating statements he made during custodial interrogation.[1] Plaintiff United States of America ("the government") filed a response in opposition to the motion [Doc. 68].

The second motion to suppress was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b) [Doc. 59], and an evidentiary hearing on the motion was held on September 8, 2015. After fully considering all of the evidence and the parties' arguments, I **RECOMMEND** that Defendant's second motion to suppress be **DENIED**.

---

[1] Defendant previously unsuccessfully moved to suppress all evidence seized during a "parole search" of his residence and all incriminating statements he made thereafter, arguing the search was illegal because it was not reasonable under the totality of the circumstances and any statement he made should be suppressed under the fruit-of-the-poisonous-tree doctrine [Doc. 38]. As used herein, "Miranda rights" and "Miranda warnings" refer to the rights and warnings addressed in *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

## I. FACTUAL BACKGROUND

Defendant is currently charged in a five-count superseding indictment with conspiring to possess with the intent to distribute 50 grams of methamphetamine (actual) and 500 grams or more of a methamphetamine mixture, possessing with the intent to distribute marijuana and 50 grams of methamphetamine (actual) and 500 grams or more of a methamphetamine mixture, possessing a firearm in furtherance of a drug trafficking offense, and being a felon in possession of a firearm and ammunition.

As pertinent here, during the evidentiary hearing on the first motion to suppress, the government presented the testimony of Chad Owenby and Ben Clayton, detectives with the Bradley County Sheriff's Office ("BCSO"), who testified about two Miranda warnings given to Defendant prior to custodial interrogation. As pertinent to the second motion to suppress, Detective Clayton testified in the hearing on the first motion to suppress that after the discovery of contraband in Defendant's bedroom, he handcuffed Defendant with his hands behind his back and informed Defendant of his Miranda rights [Doc. 39 at Page ID # 347-48]. BCSO/Drug Enforcement Administration Task Force Officer Carl Maskew did not testify during the first hearing, but Detective Owenby testified that he heard Officer Maskew inform Defendant of his Miranda rights, heard Defendant respond that he understood his Miranda rights and heard Defendant respond to questions posed by Officer Maskew [Doc. 39 at Page ID # 336-37].[2]

Addressing a multitude of stark differences between the detectives' collective testimony and Defendant's testimony during the first hearing, the Court found Defendant's version of events was not as credible as the detectives' version. As pertinent to the second motion to suppress, the Court specifically found, among other findings, that: (1) the testimony of the

---

[2] Officer Maskew currently works in law enforcement in Florida.

detectives was fully credible, while Defendant's testimony was less credible than that offered by the detectives; (2) based on the credible testimony of the detectives, the time, manner, and method of Defendant's detention was reasonable; and (3) under the totality-of-the-circumstances standard, the manner and scope of the search and seizure was entirely reasonable. Given that the detectives testified that Defendant was given Miranda warnings and Defendant expressly chose not to challenge any Miranda issues in either his testimony or argument, the Court also found that the government met its burden of proof that Defendant was given proper Miranda warnings and knowingly and voluntarily waived his rights [Doc. 38].[3]

During the hearing held on the second motion to suppress, the government called Detective Clayton (again) and Officer Maskew as witnesses. As pertinent, both law enforcement officers credibly testified they each separately recited proper Miranda warnings to Defendant. Specifically, Officer Maskew confirmed he was called to the scene because of the large quantity of drugs found during the search and the resulting possibility of a federal prosecution. Upon Officer Maskew's arrival at Defendant's residence, Defendant was moved into a spare bedroom where Officer Maskew and another officer were located. The door was shut and Officer Maskew recited the Miranda warnings to Defendant. Officer Maskew credibly testified that Defendant specifically stated he understood his Miranda rights and then engaged in a ten minute discussion about his involvement with methamphetamine. These are the incriminating statements at issue.

Officer Maskew testified the interrogation atmosphere for questioning Defendant was cordial, non-threatening, amendable, and even pleasant in accordance with his training that a pleasant atmosphere leads to better interrogation results. Defendant sat on the bed, was calm,

---

[3] While Defendant did object to many aspects of the report and recommendation from the first motion to suppress, he did not challenge any of the findings or conclusions regarding his receipt of proper Miranda warnings or his knowing and voluntary waiver of his Miranda rights.

3

and did not exhibit a bad attitude. No guns were drawn and Officer Maskew moved the handcuffs from the back to the front of Defendant before questioning Defendant. Defendant did not complain to Officer Maskew that his handcuffs were too tight. Officer Maskew indicated Defendant appeared to have no trouble understanding him or providing the information he was willing to provide. Officer Maskew did not remember Detective Owenby being present for the Miranda warnings, but did recall Detective Owenby coming into and going out of the interrogation room a few times.

Although Defendant answered question about methamphetamine for about ten minutes, when Defendant was asked to provide a password to unlock his password-protected cell phone and to consent to a search of the cell phone, Defendant refused stating he had a lot of numbers in his phone. When asked if he would be willing to cooperate, Defendant again refused stating that he had "done time before and would do time again" before he would cooperate.

During the hearing on the second motion to suppress, Defendant again testified. In addition, he called Rebecca Wade, one of the two women present during the search, as a witness. Defendant testified that he was never given Miranda warnings and that if he had been given the warnings, he would have understood them. He again said he was handcuffed as soon as the search began, but he did not dispute the atmosphere of the questioning described by Officer Maskew.

Ms. Wade testified that she was in the bathroom when the police entered. She testified that soon after the police entered the house an officer moved her from the bathroom to the living room where Defendant was already sitting in handcuffs. Ms. Wade testified she had no recall of any Miranda warnings being given to Defendant in the living room. Ms. Wade was not in the spare bedroom with Officer Maskew and Defendant during Defendant's custodial interrogation.

4

Contrary to the detectives' collective testimony, Ms. Wade testified that she heard Defendant complain that his handcuffs were too tight, hurt, and should be moved to the front when he was in the living room. Ms. Wade admitted that she was a very close friend and former roommate of Defendant's live-in girlfriend, the other woman present that day, that she had been at Defendant's house with his girlfriend for the preceding 12 hours, and that she was using methamphetamine during that time, including the morning of the search.

## II. ANALYSIS

As noted above, at the first hearing Defendant did not argue that his Miranda warnings or waiver was in any way unconstitutional, and he expressly elected not to pursue any issue about whether he received Miranda warnings at the hearing. As a result, and given the detectives' credible testimony, the Court found the government has met its burden to prove by a preponderance of the evidence that Defendant was given proper Miranda warnings and knowingly and voluntarily waived his Miranda rights. As the government has not specifically argued that Defendant is precluded from seeking this proverbially "second bite at the apple," however, the Court will address the merits of the Miranda issues raised in the second motion to suppress.

### A. Miranda Standards

The Fifth Amendment provides a defendant cannot "be compelled in any criminal case to be a witness against himself." *United States v. Protsman*, 74 F. App'x 529, 532 (6th Cir. 2003) (citing U.S. Const. amend. V.). In order to protect a suspect's constitutional right against compelled self-incrimination, the Supreme Court gave birth to the now familiar Miranda rights and warnings by holding,

> [The suspect] must be warned prior to any questioning that he has
> the right to remain silent, that anything he says can be used against

> him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

*Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Thus, a defendant's "statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [Miranda] rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)); *United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (quoting *Colorado v. Spring*, 479 U.S. 564, 572 (1987)) ("Statements made in response to custodial police interrogation must be suppressed unless the suspect first waived his Miranda rights 'voluntarily, knowingly, and intelligently.'").

### B. Were Miranda Warnings Given?

It is undisputed that Defendant was subjected to custodial interrogation prior to making the allegedly incriminating statements at issue. As a result, the first issue for resolution by the Court is to determine whether Defendant was given proper Miranda warnings. Once again, I **FIND** the testimony of the law enforcement officers to be far more credible than the testimony of Defendant on this issue. Ms. Wade is not fully credible as she admits she was using methamphetamine at the relevant time, and she was not in the interrogation room. In addition, her testimony that she does not recall Miranda warnings being given in the living room is not particularly relevant given that Defendant was Mirandized again before the interrogation began.

A court is given wide latitude in making its credibility determinations. *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002). In assessing credibility, a court considers numerous factors, ultimately relying on the common sense tests of reason and logic. *See United States v.*

*Murphy*, 402 F. Supp. 2d 561, 569 (W.D. Pa. 2005). After considering each witness's demeanor, descriptive account of the events, and overall impression, the Court previously determined the detectives gave credible testimony and does so again. In the second hearing, Officer Maskew credibly testified that Defendant was given proper Miranda warnings. While there are slight inconsistencies in the various officers' testimonies over the course of both hearings, these minor inconsistencies are entirely understandable given the lapse of time. In contrast, Defendant's testimony was less than fully credible at both hearings. Ms. Wade's testimony is likewise less than credible, but even if it was credible and not influenced by her illegal drug use and friendship with Defendant's then-girlfriend, she was not privy to the interrogation room.

Accordingly, I **FIND** Defendant was properly advised of his Miranda rights by, at least, Officer Maskew before law enforcement began custodial interrogation of Defendant.

### C. Did Defendant Properly Waive his Miranda Rights?

The next issue for resolution by the Court is whether Defendant understood and voluntarily waived his Miranda rights. A defendant may relinquish his Miranda rights (1) if the waiver is voluntary—i.e., "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) if it was knowing and intelligent—i.e., "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Spring*, 479 U.S. 564, 573 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The waiver of the right to remain silent can be express or implied, based on the words and actions of the person interrogated. *Berghuis*, 560 U.S. at 383-84, 387.

In assessing whether a confession was made voluntarily, a court must determine, in the totality of the circumstances, whether the confession was the product of the defendant's unconstrained free will. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). Whether a

7

defendant comprehended and voluntarily waived his Miranda rights must be determined from the "perspective of the police." *Al-Cholan*, 610 F.3d 954 (quoting *Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009)). "Evidence that a defendant suffered, at the relevant time, from a condition or deficiency that impaired his cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary." *United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989). As the Supreme Court has explained, "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164-65 (1986) (indicating that if the defendant's state of mind makes him susceptible to coercion, a lesser degree of coercive conduct may render the confession involuntary, but explaining that "mere examination of the [defendant]'s state of mind can never conclude the due process inquiry.").

The government bears the burden to prove that a confession was voluntary by a preponderance of the evidence. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999); *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992). While the government bears the burden of proof to show that Defendant's waiver of Miranda rights was voluntary, Defendant must first point to some evidence of improper police activity. *See United States v. Gatewood*, 230 F.3d 186, 193 (6th Cir. 2000) (admitting confession where defendant "failed to advance any evidence of coercive police activity"). "Absent coercion," the Sixth Circuit has "held that a waiver was voluntary even where the defendant was under the influence of 'an intoxicating medication'" or had been "drinking heavily." *United States v. Dunn*, 269 F. App'x 567, 572 (6th Cir. 2008) (citations omitted).

8

A forensic evaluation found Defendant has some mental health issues, but that he is competent and displays no symptoms that would preclude his ability to understand the nature and consequences of the proceedings against him [Docs. 28, 61]. Similarly, there is no reason to conclude that Defendant failed to understand the Miranda warnings he now claims were never given to him. Moreover, although Defendant suffers from a lack of formal education beyond the eighth grade, I **FIND** no evidence that the detectives took advantage of him. The detectives credibly testified they did not make any threat or promise to Defendant, and described Defendant as cooperative until asked about cooperation against others. Defendant has spent a large amount of time in the criminal justice system, and there is no credible evidence of any coercion, let alone coercion that would be sufficient to render his confession involuntary. Rather, Defendant demonstrated an understanding of his Miranda rights when he refused to answer certain questions regarding cooperation and refused to unlock his password-protected cell phone. There is also no evidence that Defendant failed to understand the consequences of relinquishing his Miranda rights. Indeed, Defendant admitted he would have understood the Miranda warnings if they had been given, and then implausibly disputed the warnings were given.

Based on the credible testimony, I **FIND** that Defendant was alert, competent, and capable of understanding the Miranda warnings at the time he made his incriminating statements. In addition, Defendant was neither coerced nor gave law enforcement any indication he did not understand his rights. Accordingly, I again **CONCLUDE** that Defendant voluntarily, knowingly and intelligently waived his Miranda rights.

## III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[4] that Defendant's motion to suppress [Doc. 53] be **DENIED**.

                                                s/ *Susan K. Lee*
                                                SUSAN K. LEE
                                                UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are "frivolous, conclusive or general." *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (internal quotation marks and citation omitted). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).