| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:14-cr-72 |
| v. ) | |
| ) | Judge Travis R. McDonough |
| CHARLES MASSENGILL ) | |
| ) | Magistrate Judge Susan K. Lee |
| ) | |

**MEMORANDUM & ORDER**

Before the Court are Defendant's objections (Doc. 104) to Magistrate Judge Susan Lee's Report and Recommendation ("R&R") recommending the denial of Defendant's motion to suppress (Doc. 75) and Defendant's appeal (Doc. 76) of Magistrate Judge Lee's order denying Defendant's motion to compel disclosure of the identity of the confidential informant (Doc. 78). The Government responded and opposes both the objection and the appeal. (Docs. 79, 109.)[1]

**I.     BACKGROUND**

This case has been the subject of a very active procedural history. On August 29, 2014, Defendant filed a motion for a psychiatric exam. (Doc. 14.) On September 2, 2014, Defendant filed a motion to suppress the evidence found during a search of his home. (Doc. 16.) While his suppression motion was still pending, Magistrate Judge Lee granted the motion for a psychiatric exam and the case was stayed pending a ruling on Defendant's motion. (Doc. 19.) On January

---

[1] The Government filed a motion for an extension one day after the Court's deadline to respond expired, and filed its response one day later. (Doc. 107.) Given that Defendant does not oppose the motion, the Court will **GRANT** the extension. Counsel is reminded that the Court expects attorneys who practice before it to comply with the Court's deadlines whether the attorney is in town or out of town on a particular deadline.

12, 2015, the Court determined that Defendant was competent to stand trial. (Doc. 28.) On February 27, 2015, Magistrate Judge Lee issued an R&R recommending that the Court deny the motion to suppress, which the Court adopted over Defendant's objections on April 8, 2015. (Doc. 38.) In the order adopting the R&R, the Court adopted by reference the facts as stated in the Magistrate Judge's R&R.[2] (*Id*. at 3.) Because the same facts form the basis of the incident on which the current challenges are based, the Court will reproduce those facts below:

> Defendant is charged in a four-count indictment with conspiring to distribute 500 grams or more of methamphetamine, possessing marijuana with the intent to distribute it, possessing a firearm in furtherance of a drug trafficking offense, and being a felon in possession of a firearm.
>
> During the evidentiary hearing, the government presented the testimony of Marshall Hicks, Kevin Chastain, Chad Owenby, and Ben Clayton, all detectives with the Bradley County Sherriff's Office ("BCSO") and Beverly Cameron, a parole officer with the Tennessee Board of Probation and Parole. Defendant testified on his own behalf. The stark differences between the detectives' collective testimony and Defendant's testimony will be addressed herein as relevant.
>
> . . .
>
> Less than a week before the search at issue, a criminal informant told Detective Marshall Hicks that Defendant "was selling large amounts of methamphetamine" and that Defendant stored methamphetamine at his home, in a wooden box in his bedroom beside the door. The informant did not say that he or she had actually purchased or seen a purchase of methamphetamine from Defendant, but the informant reported he or she had seen Defendant with a large bag of methamphetamine on more than one occasion and had smoked methamphetamine with Defendant. The informant also told Detective Hicks that Defendant was known to have a gun. Detective Hicks, who was not previously aware of Defendant's alleged involvement in drug trafficking, proceeded to investigate the informant's information by locating Defendant's residence and identifying Defendant. During this investigation, Detective Hicks learned that Defendant was on parole in Tennessee.
>
> After learning Defendant was on parole, Detective Hicks visited Defendant's parole officer, Officer Cameron, on May 15, 2014. Detective Hicks confirmed

---

[2] Defendant had not objected to the facts, only to the findings and legal conclusions drawn from those facts.

with Officer Cameron that Defendant remained on parole, he shared with her the information provided by the informant, and he requested a copy of Defendant's Tennessee Parole Certificate so that he could conduct a parole search of Defendant's person, home and property. Officer Cameron provided Detective Hicks with a copy of Defendant's Tennessee Parole Certificate, but she did not accompany Detective Hicks to Defendant's home for the search. Officer Hicks stated that over his one-to-two-year tenure working narcotics with the BCSO (where he had worked in law enforcement for about 11 years), he had conducted three other warrantless searches on parolees or probationers using their Tennessee conditions of parole/probation to authorize the search. In each case, the parole/probation officer did not participate in the search.

Immediately after obtaining the Tennessee Parole Certificate, Detective Hicks and other BCSO officers went to Defendant's home around 3:00 p.m. Two men were leaving the premises as the officers arrived, and they were allowed to leave. Under the detectives' version of events, Defendant answered their knock at the front door, they provided him a copy of his Tennessee Parole Certificate and explained their intent to conduct a parole search, Defendant allowed them to enter his home without objection or question, and Defendant sat on the couch in the living room and appeared to read (and reread) his Tennessee Parole Certificate. Several detectives credibly testified that Defendant was not detained or handcuffed at this time.

Under the Defendant's starkly contrasting version of events, he was laying in his bed when he heard cars pull up next to his home. Defendant got up, partially opened the front door, and saw the detectives. Defendant testified the detectives pushed the door open, entered his home without permission, immediately handcuffed him, searched his person, emptied his pockets, and placed what they found in his pockets on the coffee table. Only then, according to Defendant, did the detectives provide him with a copy of his Tennessee Parole Certificate. While Defendant admitted that he was shooting methamphetamine in May of 2014, he denied it made him high and he denied using methamphetamine the day of or the day before the search. Defendant said that it made "the girls" happy for him to use methamphetamine so he used it and pretended it made him high. Defendant admitted he had "given" methamphetamine to the two girls present the day of the search.

According to Detective Hicks, once inside the home he recognized an odor of cut marijuana that got stronger as he approached Defendant's bedroom. Detectives Hicks, Chastain, and Owenby went to and began the search of Defendant's bedroom. Detective Clayton remained in the living room with Defendant and the two girls but neither the girls nor Defendant were restrained at that time. In the bedroom, Detective Chastain observed a wooden box, which contained about one ounce of suspected methamphetamine in a plastic cup, which was resting on top of Officer Cameron's business card. Immediately thereafter, Detective Owenby

3

returned to the living room and asked Detective Clayton to detain and handcuff Defendant.

Detective Clayton testified that in order to handcuff Defendant, he extended the reach of his handcuffs by joining two sets of handcuffs and he handcuffed Defendant with his hands behind his back. He then read Defendant his Miranda rights. Detective Clayton said he properly placed the handcuffs on Defendant with his hands behind his back and a finger of space between the shackle and the wrist. Detective Clayton testified, and Defendant did not contradict, that Defendant at no time complained the handcuffs were too tight. Defendant, however, testified that, as a result of him being too tightly handcuffed, he suffered and continues to suffer from pain in his wrist. Defendant further testified that sometime later a doctor at the Bradley County jail examined his handcuff injury and said his hand had a "bible bubble."

As the bedroom search continued, Detective Hicks located a pistol under a pillow on Defendant's bed. In plain view on the floor of an open bedroom closet, Detective Owenby observed approximately five pounds of marijuana in an open garbage bag. Next to the marijuana was a large (about a foot tall) metal can with "potato sticks" handwritten on the lid. Detective Owenby shook the can and perceived that the noise emitted from the can was not consistent with the weight or sound of potato sticks; he also noticed the can had no label or glue from a removed label. The officers also located a locked toolbox and a safe or lockbox in the closet.

Detective Owenby testified he asked Defendant what was in the safe and for a key to the safe, and that Defendant willingly provided him with the keys. Defendant testified to the contrary, stating he did not provide the keys; they were taken out of his pockets without permission during the search of his person when the detectives first entered his home. In any event, the locked safe was opened with the key and more than $128,000.00 in cash was found. The locked toolbox was found to contain methamphetamine, marijuana, currency, and a set of digital scales.

In light of the criminal informant's tip, the proximity of the can to other controlled substances, that the can was "out of place" in the bedroom closet as no other food items were located therein, that the can was too heavy for and did not sound like it contained potato sticks, and the officers' knowledge, training, and experiences, the officers discussed their authority to open the can. Because the officers were not sure they could open the can as part of a warrantless parole search, they consulted with a state district attorney by phone and were advised they could open the can. Detective Owenby then cut open the can and found approximately 2.4 pounds of suspected methamphetamine. Numerous photographs of the seized contraband were entered into evidence [Government's Exhibits 4-16].

> After the search was completed, BCSO/Drug Enforcement Administration Task Force Officer Carl Maskew arrived. He read Defendant his *Miranda* rights again, moved the handcuffs restraining Defendant from the back to the front, and questioned Defendant. According to the detectives, Defendant orally stated he understood his rights and made incriminating statements in response to custodial interrogation.

(Doc. 35, at 2–9.)

On August 11, 2015, Defendant filed a second motion to suppress—this time directed at statements he made during the search of his residence (Motion to Suppress Statement") (Doc. 53)—and a motion to compel the Government to disclose the identity of its confidential informant ("CI") ("Motion to Compel") (Doc. 55). The Government responded to Defendant's Motion to Compel on August 27, 2015 (Doc. 66), and responded to Defendant's Motion to Suppress Statement on August 28, 2015 (Doc. 68).

On September 16, 2015, Magistrate Judge Lee entered an R&R (Doc. 75), recommending that the Court deny Defendant's Motion to Suppress Statement, and on September 17, 2015, Magistrate Judge Lee entered a Memorandum and Order (Doc. 76) denying Defendant's Motion to Compel. On October 5, Defendant appealed the Magistrate Judge's Memorandum and Order (Doc. 78) and the Government responded in opposition to Defendant's appeal on October 22, 2015 (Doc. 79).

On November 4, 2015, Defendant filed a Motion to Substitute Counsel. (Doc. 80.) Magistrate Judge Lee held a hearing on November 17, 2015. Magistrate Judge Lee granted the motion, appointed Attorney Samuel F. Robinson, III, and directed him to notify the Court whether he intended to persist in the motions filed by prior counsel. In response, Robinson requested until January 15, 2016, to research and assess the previously filed motions. (Doc. 86.) After several extensions to allow him to adequately prepare his response, Robinson notified the Court that Defendant intended to persist in his appeal of the Magistrate Judge's order (Doc. 95-1)

and filed an objection to the Magistrate Judge's R&R (Doc. 104). The Government responded to the objection, and these issues are now ripe for review. (Doc. 109.)

## II. STANDARD OF REVIEW

Defendant challenges two of the Magistrate Judge's rulings in this case. The first is a recommendation Magistrate Judge Lee made on a motion to suppress. On motions to suppress, magistrate judges must submit their findings as an R&R to the district judge. 28 U.S.C. § 636(b)(1)(A), (B). In ruling on objections to an R&R, this Court must conduct a *de novo* review of those portions to which a party objects. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The magistrate judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999). The magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

Defendant also challenges Magistrate Judge Lee's ruling denying his motion to compel. Unlike a motion to suppress, a magistrate judge may issue her own determination on a motion to compel. 28 U.S.C. § 636(b). The Court will grant an appeal of the magistrate judge's ruling only if her determination is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). A finding will be considered clearly erroneous only "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

### III. ANALYSIS

#### a. Motion to Suppress Statement

In support of his initial Motion to Suppress Statement, Defendant claims he was not given any *Miranda* warnings and he did not understand any such warnings the Government asserts he was given. (Doc. 54, at 2.) After holding an evidentiary hearing, Magistrate Judge Lee entered an R&R recommending that the Court deny the Motion to Suppress Statement. (Doc. 54.) Magistrate Judge Lee based her ruling on the fact that the officers' testimony at the hearing demonstrated both that the warnings were given and that Defendant voluntarily waived those rights. (*Id*. at 9.) In his objections, Defendant challenges the credibility determinations upon which Magistrate Judge Lee based her finding that he had been given *Miranda* warnings. (Doc. 104, at 7–13.) He also argues—for the first time—that any warnings that had been given were insufficient. (*Id*. at 13–15.)

The Fifth Amendment protects a person from compelled self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). Due to the inherently coercive effect of custodial interrogation, a suspect who is in custody and subject to interrogation must be given *Miranda* warnings before he may be interrogated. *Miranda*, 384 U.S. at 467–68. Officers must adequately and effectively apprise such individuals of their rights and must fully honor their decision should they seek counsel before answering questions. *Id*. at 467. If an individual agrees to answer questions without counsel, the officer can then question the individual freely. *Davis v. United States*, 512 U.S. 452, 458 (1994). The Government bears the burden of establishing a waiver by the preponderance of the evidence. *United States. v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009). To be effective, the "waiver of *Miranda* rights must be voluntary, that is, 'the product of a free and deliberate choice rather than intimidation, coercion or deception.'"

7

*Id*.  Such a waiver must be "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it."  *Daoud v. Davis*, 618 F.3d 525, 529 (6th Cir. 2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Defendant objects to Magistrate Judge Lee's finding that the law enforcement witnesses were more credible than the Defendant.  Defendants face an uphill battle when challenging credibility determinations made by a magistrate judge in this context.  *See Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001); s*ee generally United States v. Pule*, No. 4:11-CR-37, 2013 WL 30219, at *2 (E.D. Tenn. Jan. 2, 2013) (discussing "the substantial body of law which recognizes the deference owed to the credibility determinations of magistrate judges").  As grounds for overturning Magistrate Judge Lee's specific finding that Officers Clayton and Maskew were credible, Defendant argues that there were inconsistencies in their testimony with regard to who was present in the room when warnings were given and that the Affidavit of Complaint (Doc. 104-1) makes no mention of *Miranda* warnings.  (Doc. 104.)  As to the alleged inconsistencies, they all involve tertiary issues of who was or was not in the room when the warnings were allegedly given—matters that are not legally relevant to whether the warnings were or were not given.  The Court is not convinced that the statements are in fact inconsistent.  The alleged contradictions are insufficient to overturn the credibility finding made by Magistrate Judge Lee.  As to the Affidavit of Complaint's omission of the fact that *Miranda* warnings were given, the Affidavit of Complaint made no reference to any statement made by Defendant, so there was no reason for the writer to include the fact that warnings were given.  For these reasons, the Court will not overturn Magistrate Judge Lee's finding crediting the officers' testimony.

Defendant also argues the warnings given were inadequate.  At the suppression hearing,

Detective Clayton testified that he gave the *Miranda* warnings from memory and recited the warnings as he would have given them:

> You have a right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to an attorney. If you cannot afford one, one will be appointed you. At any time you wish to stop answering questions to anyone present, feel free to do so.

(Doc. 103, at 13.) Officer Maskew testified similarly that he would have given the warnings as follows:

> From memory it's, you [sic] the right to remain silent. Anything you say may be used against you in court. You have the right to an attorney. If you cannot afford an attorney, one will be appointed to represent you, if you wish. You have the right to stop answering any of these questions at any time. And do you understand these rights?

(*Id*. at 26.) Defendant argues both of these sets of warnings are deficient because they do not specify that the defendant has a right to have an attorney present during questioning. This argument was not made in Defendant's original motion, nor did Defendant raise it at the hearing before Magistrate Judge Lee; rather, it was raised for the first time in his objection. As such, the argument is waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (collecting cases holding that arguments first made in an objection to an R&R are waived).

Even if this argument were not waived, the Court would still reject it. *Miranda* requires that the defendant be given the following warnings:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation.

*Miranda*, 384 U.S. at 479. The Supreme Court has long made clear that "no talismanic incantation [is] required to satisfy [*Miranda*'s] strictures." *California v. Prysock*, 453 U.S. 355, 359 (1981) (per curiam). The Court has long been cognizant of the fact that, as here, officers in

the field do not always have access to printed *Miranda* warnings.  *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989).  The Court, therefore, "need not examine *Miranda* warnings as if construing a will or defining the terms of an easement[;]" rather, "[t]he inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'"  *Id.* (quoting *Prysock*, 453 U.S. at 360).

When presented with the question of whether a defendant was adequately informed of his right to the presence of appointed counsel prior to and during interrogation, courts "have not required a verbatim recital of the words of the *Miranda* opinion but rather have examined the warnings given to determine if the reference to the right to appointed counsel was linked with some future point in time after the police interrogation."  *Prysock*, 453 U.S. at 360.  Here, nothing about the warning given insinuated that the right to an attorney was tied to some future event.  Even if the warnings could have been clearer, they reasonably conveyed the essential elements required by *Miranda*.

Accordingly, the Court will **REJECT** Defendant's objection and **ACCEPT** and **ADOPT** Magistrate Judge Lee's R&R.

### b. Motion to Compel Disclosure

Defendant filed an appeal (Doc. 78), of Magistrate Judge Lee's order denying his Motion to Compel (Doc. 76).  The Government responded, opposing the appeal.  (Doc. 79.)

The Government is generally not required to disclose the identity of a confidential informant, but "[w]here the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.  *Roviaro v. United States*, 353 U.S. 53, 60–61 (1957).  In determining whether the privilege should be overcome, the Court must balance "the public interest in protecting the flow of

Case 1:14-cr-00072-TRM-SKL   Document 110   Filed 06/14/16   Page 10 of 13   PageID #: 782

information against the individual's right to prepare his defense[,] . . . taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62. "Mere invocation of this right does not automatically outweigh the public interest in protecting confidential informants." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). And danger to an informant's life is entitled to "significant weight." *United States v. Jackson*, 990 F.2d 251, 255 (6th Cir. 1993).

Applying the above standards, Magistrate Judge Lee determined that Defendant had not met his burden to show that disclosure would substantively assist his defense. She determined that the informants did not play a substantial role in the criminal activity charged, that defendant had not established that disclosure of their identity would have been helpful to the defense, and that the Government had a strong interest in non-disclosure because it was necessary to protect the informants. (Doc. 76.)

As stated above, the Court will grant an appeal of the magistrate judge's ruling only if her determination is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Upon review of the record, the Court is convinced that not only is the Magistrate Judge's conclusion not clearly erroneous, it is correct.

Defendant's argument on appeal is somewhat difficult to follow. Defendant concedes that the informants' testimony could be relevant only to whether Defendant distributed drugs prior to the date of the search and that the Government is likely to rely primarily on the amount of drugs seized in the search to show Defendant was engaged in a drug distribution conspiracy. He argues that testimony from the informants regarding whether he previously engaged in "unpaid distribution between friends" could help him cast doubt on the Government's theory of ownership. (Doc. 78, at 5.)

As the Government points out, Defendant is actually charged with conspiracy to possess with intent to distribute. (Doc. 47.) Thus, while the Government must prove intent to distribute, it is not required to show actual distribution. *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006) ("The elements of a charge of possession with intent to distribute illegal drugs are: (1) the defendant knowingly, (2) possessed a controlled substance, (3) with intent to distribute."). While whether Defendant engaged in distribution would be relevant to whether he had the requisite intent to distribute, the evidence he wishes to put forth—that he previously engaged in "unpaid distribution between friends," (Doc. 78, at 5)—tends to support the Government's allegation of distribution rather than negate it. *See United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995) ("Proof of intent to *sell* is not required." (emphasis in original)) *accord United States v. Wallace*, 532 F.3d 126, 129 (2d Cir. 2008) (holding that "the sharing of drugs, without a sale, constitutes distribution for purposes of 21 U.S.C. § 841(a)").

Finally, Defendant argues that Magistrate Judge Lee erred in accepting the Government's policy argument in the absence of actual proof of risk to the informants. (Doc. 78, at 6.) As Judge Lee recognized, "the privilege against disclosure of a confidential source itself recognizes the need to preserve anonymity to persons communicating knowledge of the commission of crimes." (Doc. 76, at 8.) In such a case as this, where the informant is a tipster rather than an active participant, and where Defendant has made little showing that the identities of the informants would be helpful to the defense, the public's general interest in protecting the flow of information to the Government is sufficient to justify invocation of the privilege. *See United States v. Dexta*, 136 F. App'x 895, 905 (6th Cir. 2005).

Here, Magistrate Judge Lee correctly determined that Defendant had not met his burden to show that disclosure of the identity of the informants was essential or relevant and helpful to

12
Case 1:14-cr-00072-TRM-SKL   Document 110   Filed 06/14/16   Page 12 of 13   PageID #: 784

his defense.  Accordingly, Magistrate Judge Lee properly denied the motion to compel disclosure.  The Court will **AFFIRM** Magistrate Judge Lee's order (Doc. 76) and will **REJECT** Defendant's appeal (Doc. 78).

IV.     CONCLUSION

For the foregoing reasons, the Court **REJECTS** Defendant's appeal (Doc. 78) and objection (Doc. 104), **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's R&R (Doc. 75), **DENIES** Defendant's motion to suppress his statement (Doc. 53), and **AFFIRMS** Magistrate Judge Lee's order denying Defendant's motion to compel (Doc. 76).  An order will enter resetting this case for trial.

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**